UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COMPLAINT CLASS ACTION:
JASON MELANCON,                      CIVIL ACTION NO.07-7712
JEFFREY ROUSE, M.D.,
JENNIFER R. TOUPS,
CHRISTOPHER CARBINE,                 SECTION:   "J"
INDIVIDUALLY and on
behalf of all others similarly       JUDGE BARBIER
situated
                                     MAGISTRATE 1
VERSUS

IRON MOUNTAIN, INC.                  JURY DEMANDED

## FIRST AMENDED AND SUPPLEMENTAL
## CLASS ACTION COMPLAINT

NOW INTO COURT, by and through undersigned counsel, comes Jason Melancon,

Jeffrey Rouse, M.D., Jennifer R. Toups, and Christopher Carbine, all of the full age of

majority, (hereinafter "claimants" and/or "class representatives") and residents of Louisiana,

who, appearing herein through this Complaint pursuant to Federal Rule of Civil Procedure

23(a) and (b)(1), as representatives of all persons similarly situated, having a common and

undivided interest in the subject matter of this litigation, and individually, respectfully

represent that:

1.

The instant "First Amended and Supplemental Class Action Complaint" completely

and fully amends and supplements the Original Class Action Complaint filed on October 31,

2007.

## **INTRODUCTION**

2.

This action arises from Defendant's failure to maintain adequate security of personal financial information from the Louisiana Office of Student Financial Assistance (LOSFA) including personal and financial data on residents of the State of Louisiana.

3.

This incident is the most recent in a series of data breaches committed by Iron Mountain, a company entrusted with protecting personal and financial information.  This avoidable breach has exposed thousands of Louisiana residents to identity theft and fraud.

4.

Plaintiffs bring this action based upon personal knowledge and otherwise upon information and belief and alleges as follows.

## **JURISDICTION AND VENUE**

5.

This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendant did or is doing business in this state and judicial district.

## THE PARTIES

7.

Plaintiffs JASON MELANCON, JEFFREY ROUSE, M.D., JENNIFER R. TOUPS, and CHRISTOPHER CARBINE are major individuals domiciled in the State of Louisiana. Each of their personal and financial information was lost by Iron Mountain and they have each been damaged as a result.

8.

Defendant, IRON MOUNTAIN, INC. ("Iron Mountain"), a corporation domiciled in the State of New York with its principle place of business in Massachusetts, and doing business in Louisiana within the jurisdiction of this Honorable Court.  Iron Mountain is a publicly traded corporation and one of the largest records management, data protection and information destruction companies in the world.

9.

Iron Mountain, Inc., the entity directly responsible for this data breach, is wholly responsible for any liability imposed on Iron Mountain, Inc., making Iron Mountain, Inc. the proper Defendant in this action. At appropriate times, Iron Mountain, Inc. may be referred to as "Defendant."

## FACTUAL ALLEGATIONS

10.

Iron Mountain, Inc. is a massive, publicly traded corporation with a presence around

3

the world and markets itself as a leader in the fields of records management, data protection, and information destruction.  It is well versed in the data protection and recovery challenges faced by businesses, including "natural disasters and human threats" and "security breaches from viruses, worms, hackers" and offers solutions to combat these significant threats.  *See* http://www.ironmountain.com/dataprotection/.

11.

In addition, Iron Mountain is well aware of the damage caused by massive data breaches.  On at least four other occasions over the past two years Iron Mountain lost personal and financial information across the country.  After each of those data breaches, Iron Mountain apologized, and at one point commented that the accidental loss of backup tapes "poses a potential risk."

12.

Knowing its expertise in this area, the State of Louisiana, and specifically LOSFA, contracted with Iron Mountain to serve as its exclusive data storage contractor.  Iron Mountain was charged with the duties of storing and protecting sensitive financial information for thousands of people.

13.

Despite that Iron Mountain was charged with protecting this sensitive financial information, it informed LOSFA on or about September 20, 2007 that it had lost some of LOSFA's back-up media on September 19, 2007.  To date, this information has not been

4

recovered or located.

14.

LOSFA only disclosed that the data "disappeared" when it was being transferred from Iron Mountain's delivery truck to one of LOSFA's facilities, and gives no details regarding how it occurred.  Iron Mountain has yet to make any statements on the data loss.

15.

The lost media includes personal data on residents of the State of Louisiana, many of whom are past and present students at Louisiana postsecondary institutions.  It also includes loan extract data for all loans guaranteed by LOSFA, START Saving Program data on account owners and beneficiaries, scholarship and state grant data that includes FAFSA and ACT records, and Social Security numbers for students and their parents.

16.

LOSFA has disclosed that information belonging to the following classes of persons was lost:

- Anyone who has a Louisiana College Savings account (START Saving Program);

- Any resident of the state of Louisiana who has completed a Free Application for Federal Student Aid (FAFSA);

- Anyone who has completed a FAFSA and included a Louisiana postsecondary institution as an institution to which FAFSA data should be sent;

- Anyone who has applied for or received a Tuition Opportunity Program for Students (TOPS) Scholarship; and

    ○    Anyone who has applied for or who has received student financial aid in the State of Louisiana.

17.

While LOSFA claims that no *financial* information belonging to many of the class members was lost, it has admitted that names, addresses, dates of birth, and social security numbers for all of them was included in the lost data. However, in addition to that identifying information, financial information, including bank account and credit card numbers, belonging to persons who either provided their information to LOSFA for automatic deposits into the START Saving Program, or had defaulted on a student loan was lost.

18.

With regard to those persons whose personal identifying information (names, addresses, dates of birth, social security numbers) was lost, LOSFA has recommended that they place a 90-day fraud alert on their credit reports through the three credit reporting agencies. While LOSFA claims that a fraud alert does not impact a person's credit score, this alert may be viewed as an adverse notation.

19.

With regard to other class members whose financial information was lost, LOSFA has recommended other actions to protect against identity theft. Specifically, LOSFA recommends that the account holder close the account, request that the account be flagged as "closed due to security breach," request that a letter be sent by the bank verifying the

closure and flagging of the account, and open a new account and password protect it with a new password.

20.

LOSFA also recommended that all class members request their credit report immediately and then every four months thereafter to check for credit irregularities. Each of the class representative's sensitive personal data was within the data lost by Defendant.

21.

Since this private and sensitive personal and financial information has been lost, Plaintiffs and the Class they seek to represent are at risk for credit card fraud and identity theft and are in need of protective measures to guard against such damage.  This is evidenced by LOSFA's proper recommendations to the Plaintiffs and other class members to close bank accounts, have them "flagged" as "closed due to security breach," password protect new accounts, place a "fraud alert" with credit reporting agencies, regularly check credit reports, and to consider placing a "credit freeze" on credit reports.

22.

Identity theft, also known as identity fraud, is one of the fastest growing crimes in the nation. Identity theft is more than someone stealing a credit card and making fraudulent charges. Identity theft happens when someone uses another person's personal information to commit theft. This information may be as simple as a name, address, and date of birth, or as detailed as a Social Security number, or a mother's maiden name. An identity thief uses

this information to open credit card accounts, obtain loans, drain bank accounts, and more. Methods that identify thieves use to gain access to private and sensitive personal and financial information include stealing mail and conning or bribing an employee with access to that information.

23.

Once identity thieves obtain private and sensitive personal and financial information, the thieves may assume the victim's identity to commit fraud, such as:

- Call a credit card insurer and ask it to change the mailing address on the card account and request that a new card be sent to the new address. The imposter then runs up charges on the victim's account;

- Open a new credit card account, using the victim's name, date of birth, and Social Security number;
- Establish phone or wireless service in the victim's name;

- Open a bank account in the victim's name to write bad checks;

- File for bankruptcy under the victim's name to avoid paying debts incurred under the victim's name or to avoid eviction;

- Buy cars by taking out loans in the victim's name; or

- Give the victim's name to the police during arrest.

24.

Credit card fraud and identity theft can obviously cause significant problems, inconvenience, and monetary loss, especially since it can create blemishes on credit reports and cause denials of credit and cause other credit-related difficulties.

25.

According to a September 2003 report entitled "Identity Theft Survey Report" by the Federal Trade Commission, over ten million Americans were victims of identity theft in 2002. Identity theft victims spent an average of thirty hours resolving the problem. Americans lost a total of five billion dollars from identity theft.

26.

When private and sensitive personal and financial information has been compromised, one of the essential things to do to protect against credit card fraud and identity theft is to monitor credit bureau reports and ensure that notification occurs quickly if any new accounts are requested to be opened.

27.

Monitoring services exist which provide such a service and charge monthly fees for such review and notification.  In fact, each of the credit reporting agencies, including Equifax, TransUnion and Experion, specifically recommended enrollment in credit monitoring services because of this breach, despite LOSFA's recommendation against it.

28.

At LOSFA's recommendation, Plaintiff Jason Melancon called Equifax/TransUnion/Experion and requested that it place a 90-day fraud alert on his credit report.  Also, based on Equifax/TransUnion/Experion's recommendation, he enrolled in a credit monitoring program, at an expense of $24.95 for the first year, and $49.95 for each

year thereafter.  Upon information and belief, Plaintiff will need to incur these expenses for at least five years.

29.

In addition, Plaintiffs Jason Melancon, also at the recommendation of LOSFA, requested from Equifax/TransUnion/Experion a copy of his credit report for the specific purpose of ensuring that no fraudulent charges were made using his personal or financial information.  LOSFA has recommended that he check his credit report at least every two to three months.  While he is entitled to receive one copy of his credit report free every year, additional copies, as recommended by LOSFA, are not.  Upon information and belief, Plaintiff will need to monitor his credit report at least every two to three months for at least five years.

30.

In addition to incurring these present and future out of pocket expenses as a result of this data breach created by Iron Mountain, Plaintiff Jason Melancon has also experienced other damages, including inconvenience, mental anguish, and considerable stress and anxiety. Had the data breach not occurred, Plaintiff Jason Melancon would not have taken the various actions recommended by LOSFA and the various credit reporting agencies.

31.

At LOSFA's recommendation, Plaintiff Jeffrey Rouse, M.D. called Equifax/TransUnion/Experion and requested that it place a 90-day fraud alert on his credit

report.  Also, based on Equifax/TransUnion/Experion's recommendation, he enrolled in a credit monitoring program, at an expense of $24.95 for the first year, and $49.95 for each year thereafter.  Upon information and belief, Plaintiff will need to incur these expenses for at least five years.

32.

In addition, Plaintiff Jeffrey Rouse, M.D., also at the recommendation of LOSFA, requested from Equifax/TransUnion/Experion a copy of his credit report for the specific purpose of ensuring that no fraudulent charges were made using his personal or financial information.  LOSFA has recommended that he check his credit report at least every two to three months.  While he is entitled to receive one copy of his credit report free every year, additional copies, as recommended by LOSFA, are not.  Upon information and belief, Plaintiff will need to monitor his credit report at least every two to three months for at least five years.

33.

In addition to incurring these present and future out of pocket expenses as a result of this data breach created by Iron Mountain, Plaintiff Jeffrey Rouse, M.D. has also experienced other damages, including inconvenience, mental anguish, and considerable stress and anxiety.  Had the data breach not occurred, Plaintiff Jeffrey Rouse, M.D. would not have taken the various actions recommended by LOSFA and the various credit reporting agencies.

34.

11

At LOSFA's recommendation, Plaintiff Chritopher Carbine called Equifax/TransUnion/Experion and requested that it place a 90-day fraud alert on his credit report. Also, based on Equifax/TransUnion/Experion's recommendation, he enrolled in a credit monitoring program, at an expense of $$24.95 for the first year, and $49.95 for each year thereafter. Upon information and belief, Plaintiff will need to incur these expenses for at least five years.

35.

In addition, Plaintiff Chris Carbine, also at the recommendation of LOSFA, requested from Equifax/TransUnion/Experion a copy of his credit report for the specific purpose of ensuring that no fraudulent charges were made using his personal or financial information. LOSFA has recommended that he check his credit report at least every two to three months. While he is entitled to receive one copy of his credit report free every year, additional copies, as recommended by LOSFA, are not. Upon information and belief, Plaintiff will need to monitor his credit report at least every two to three months for at least five years.

36.

In addition to incurring these present and future out of pocket expenses as a result of this data breach created by Iron Mountain, Plaintiff Chris Carbine has also experienced other damages, including inconvenience, mental anguish, and considerable stress and anxiety. Had the data breach not occurred, Plaintiff Chris Carbine would not have taken the various actions recommended by LOSFA and the various credit reporting agencies.

12

37.

At LOSFA's recommendation, Plaintiff Jennifer R. Toups called Equifax/TransUnion/Experion and requested that it place a 90-day fraud alert on her credit report. Also, based on Equifax/TransUnion/Experion's recommendation, she enrolled in a credit monitoring program, at an expense of $24.95 for the first year, and $49.95 for each year thereafter. Upon information and belief, Plaintiff will need to incur these expenses for at least five years.

38.

In addition, Plaintiff Jennifer R. Toups, also at the recommendation of LOSFA, requested from Equifax/TransUnion/Experion a copy of her credit report for the specific purpose of ensuring that no fraudulent charges were made using her personal or financial information. LOSFA has recommended that she check his credit report at least every two to three months. While she is entitled to receive one copy of his credit report free every year, additional copies, as recommended by LOSFA, are not. Upon information and belief, Plaintiff will need to monitor her credit report at least every two to three months for at least five years.

39.

In addition to incurring these present and future out of pocket expenses as a result of this data breach created by Iron Mountain, Plaintiff Jennifer R. Toups has also experienced other damages, including inconvenience, mental anguish, and considerable stress and anxiety.

13

Had the data breach not occurred, Plaintiff Jennifer R. Toups would not have taken the various actions recommended by LOSFA and the various credit reporting agencies.

40.

As a result of Iron Mountain's conduct, Plaintiffs and the Class have had their financial and personal information lost or compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have suffered other damages.

41.

Plaintiffs and the Class have spent, and will continue to spend, considerable time to monitor their accounts and/or credit histories for fraudulent activity in seeking to prevent or undo any harm.

## CLAIMS FOR RELIEF

### Negligence

42.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if set forth herein.

43.

Louisiana Civil Code Article 2315 states that, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

44.

Defendant, through its relationship with LOSFA, the Plaintiff, and members of the

14

proposed Class, assumed a duty to keep class members' personal financial information private and secure. By its acts and omissions, Defendant unlawfully breached this duty.

45.

The loss of the confidential financial information was the direct and proximate result of Defendant's failure to implement and maintain security procedures and practices reasonably designed to protect the private and sensitive personal and financial information of customers.

46.

The compromise of the security of this information, and the resultant burden, fear, anxiety, emotional distress, need to close bank accounts and register with fraud alert programs, and other damages to the plaintiff and proposed Class were the direct and proximate result of Defendant's violation of general duties applicable to securing confidential information, and its conduct constituted unlawful negligence, subjecting Defendant to liability for that breach.

47.

Iron Mountain was in a special fiduciary relationship with the Class by reason of their entrustment with personal and financial information. By reason of this fiduciary relationship, Defendant had a duty of care to use reasonable means to keep the nonpublic information of the Class private and secure, as it contracted with LOSFA to do. Iron Mountain unlawfully breached this duty.

15

## CLASS ACTION ALLEGATIONS

48.

Plaintiffs re-allege and incorporate the foregoing paragraphs as if set forth herein.

49.

Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of all Louisiana residents who have a Louisiana College Savings account (START Saving Program), all residents of the state of Louisiana who has completed a Free Application for Federal Student Aid (FAFSA), anyone who has completed a FAFSA and included a Louisiana post-secondary institution as an institution to which FAFSA data should be sent, anyone who has applied for or received a Tuition Opportunity Program for Students (TOPS) Scholarship, and/or anyone who has applied for or who has received student financial aid in Louisiana between 1995 and September 13, 2007. Said definition may be further defined by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

50.

Plaintiffs alternatively seek to certify a sub-class comprised only of those Louisiana residents who have provided credit card or account information to LOSFA for purposes of making automatic payments into a START Saving Program or to repay a defaulted student loan.

51.

16

Upon information and belief, the Class and Sub-Class is so numerous that joinder of all members is impracticable.  According to press reports, the lost case held back up data for every Louisiana application for federal student aid from 1995 through September 2007.  It also involved anyone who had a college savings under the START Saving Program or who applied for the TOPS scholarship program.  The data included confidential information for not only students, but their parents as well.

52.

There are questions of law and fact common to the Class and which predominate over any individual issues.  Common questions of law and fact include, without limitation:

a.)    Whether Defendant owed a duty to the class members under the applicable statutes and law;

b.)    Whether the Defendant properly maintained the personal financial information of the Class members;

c.)    Whether Defendant breached a duty and was negligent in failing to keep class members' personal financial information secure;

d.)    Whether the Defendant was negligent in failing to immediately inform the class members, either directly or indirectly, in a timely fashion of the loss of the information;

e.)    Whether the Class is entitled to notice as to whether the security of their account and financial information was lost;

17

f.)     Whether the Class is entitled to remedies such as credit monitoring;

g.)     Whether the personal financial information, account information, and payment history information was encrypted before it was lost;

h.)     The policies and procedures developed by the Defendant regarding the transportation of personal financial information, account information, and payment history information; and

i.)     What instructions, if any, were given prior to the transportation of this personal financial information, account information, and payment history information.

j.)      whether Iron Mountain is liable for subsequent identity theft resulting from the negligent release of the class's sensitive personal and financial information.

k.)     Iron Mountain's vicarious liability for the actions of its employees.

l.)     The extent of damages caused by the defendant's negligence.

53.

Plaintiffs' claims are typical of the Class.  As with members of the Class, Plaintiff's private and sensitive personal financial information was lost or stolen as a result of Defendant's actions. As a result of that breach, Plaintiffs and the proposed class are in need of protective measures to protect them from identity theft and credit card fraud. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members.

54.

Plaintiffs will fairly and adequately represent and protect the interests of the Class because:

a.)     Plaintiffs have retained counsel experienced in the prosecution of class action litigation and counsel will adequately represent the interests of the Class;

b.)     Plaintiffs and their counsel are aware of no conflicts of interests between Plaintiffs and absent Class members or otherwise;

c.)     Plaintiffs have or can acquire adequate financial resources to assure that the interests of the Class will not be harmed; and

d.)     Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel to vigorously prosecute this litigation.

55.

A class action provides a fair and efficient method for adjudicating this controversy and is superior to other available methods of adjudication in that:

a.)     Neither the size of the Class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action;

b.)     The prosecution of separate actions by individual class members or the individual joinder of all class members in this action is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can

19

determine, with judicial economy, the rights of each member of the Class;

c.)     Because of the disparity of resources available to Defendant versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; and

d.)     The conduct of this action as a statewide class action conserves the resources of the parties and the court system, and protects the rights of each member of the Class, and meets all due process requirements as to fairness to the Defendant. The conduct of the class action is also far superior to maintenance on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct.

56.

A statewide class applying the substantive state law of Louisiana would be appropriate because Defendant did business in this state, the data was lost in this state, and the class members will be primarily Louisiana citizens. It is therefore proper and consistent with due process principles to hold Defendant to the minimum standards set by Louisiana with respect to all of its activities occurring within Louisiana.

**REQUESTED REMEDY**

57.

Plaintiffs, as the remedy for Defendant's acts and omissions, seeks to create a credit monitoring program by which Defendant is obligated to pay for monitoring of the credit

reports of each of the Class members each month for 5 years. This credit monitoring program will ensure prompt notice of any unauthorized activity on any of the Class members' accounts, or of any credit fraud through the use of any information belonging to any Class member.

58.

Plaintiffs are entitled to this recovery based upon Defendant's breach of its duty to secure the Class' account information, Defendant's failure to properly transport sensitive and confidential information, and the resulting harm caused by Defendant's actions.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, on behalf of themselves and as representatives of all other persons similarly situated, pray for judgment against the Defendant, as follows:

1. An Order certifying the Class under the appropriate provisions of F.R.C.P. Rule 23, and appointing the Plaintiffs and their counsel to represent the class;

2. For damages as alleged herein;

3. For pre-judgment interest from the date of filing this suit;

4. For reasonable attorney's fees;

5. For all costs of this proceeding; and

6. For all general, special, and equitable relief to which the Plaintiffs and the members of the class are entitled by law.

RESPECTFULLY SUBMITTED:

**MARTZELL & BICKFORD**


  /s/ Lawrence J. Centola, III
SCOTT R. BICKFORD, T.A. (#1165)
LAWRENCE J. CENTOLA, III (#27402)
NEIL F. NAZARETH (#28969)
338 Lafayette Street
New Orleans, LA 70130
(504) 581-9065 (Telephone)
(504) 581-7635 (Facsimile)
*Attorney for Plaintiffs*

DREW RANIER (#8320)
BRETT M. POWERS (#26098)
RANIER, GAYLE & ELLIOT
1419 Ryan Street
Lake Charles, LA 70601
(337) 494-7171 (Telephone)
(337) 494-7218 (Facsimile)
*Attorney for Plaintiffs*

RICHARD ARSENAULT, (#2563)
JOHN RANDALL WHALEY, (#25930)
NEBLETT, BEARD  ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309-1190
*Attorney for Plaintiffs*

PAUL G. MORESI, III, (#18071)
THE MORESI FIRM, L.L.C.
Post Office Box 1140
Abbeville, LA 70511-1140
*Attorney for Plaintiffs*

PHILIP BOHRER (#14089)
SCOTT E. BRADY (#24976)
BOHRER LAW FIRM, L.L.C.

22

8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: 225/925-5297
Facsimile: 225/231-7000
phil@bohrerlaw.com
scott@bradylawfirmllc.com
***Attorney for Plaintiffs***

JOHN P. WOLFF, III (#14505)
CHRISTOPHER K. JONES, (#28101)
KEOGH, COX & WILSON. LTD.
701 Main Street
Baton Rouge, LA 70802
Telephone: 225/383-3796
Facsimile: 225/343-9612
jwolff@kcwlaw.com
cjones@kcwlaw.com
***Attorney for Plaintiffs***